# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————————

Nº 07-CV-3767 (JFB) (ARL)

———————————————

LISA SCLAFANI,

Plaintiff,

VERSUS

PC RICHARD & SON, LI CORP., JOE VAN GLAHN (SUED IN HIS INDIVIDUAL CAPACITY PURSUANT TO N.Y. EXECUTIVE LAW § 290 ET SEQ.), FRANK RICCARDO (SUED IN HIS INDIVIDUAL CAPACITY PURSUANT TO N.Y. EXECUTIVE LAW § 290 ET SEQ.), BONNI RICHARD (SUED IN HER INDIVIDUAL CAPACITY PURSUANT TO N.Y. EXECUTIVE LAW § 290 ET SEQ.), STEVE HUFF (SUED IN HIS INDIVIDUAL CAPACITY PURSUANT TO N.Y. EXECUTIVE LAW § 290 ET SEQ.), AND JERRY PISCOPO JR. (SUED IN HIS INDIVIDUAL CAPACITY PURSUANT TO N.Y. EXECUTIVE LAW § 290 ET SEQ.)

Defendants.

———————————————

**MEMORANDUM AND ORDER**
November 9, 2009

———————————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Lisa Sclafani ("plaintiff" or "Sclafani") brought this action on September 10, 2007 against defendants PC Richard & Son ("PCR"), Joe Van Glahn ("Van Glahn"), Frank Riccardo ("Riccardo"), Bonni Richard ("Rondinello"), Steve Huff ("Huff"),[1] and Jerry Piscopo Jr. ("Piscopo"), alleging that defendants discriminated against her on the basis of gender during her employment at PCR by subjecting her to a hostile work environment, retaliated against her for complaining about same, discriminated

———————————————

[1] Van Glahn, Riccardo, Rondinello, and Huff are hereinafter referred to collectively as the "manager defendants."

against her on the basis of disability, retaliated against her for requesting a reasonable accommodation of her disability, and are liable for an assault and battery committed by Piscopo. Against PCR, plaintiff asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York Executive Law § 290 *et seq.* ("NYSHRL"), and the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA"). Plaintiff also sues the individual defendants based on the same alleged conduct pursuant to the NYSHRL, New York Executive Law § 296(6). Finally, plaintiff brings a New York assault and battery claim against Piscopo, and against PCR for that tort under a theory of vicarious liability.

Defendants now move for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motions are granted in part and denied in part.

## I. Background

### A. Facts

The facts relevant to the instant motion are set forth in the Discussion section *infra*. They are taken from the parties' depositions, affidavits, exhibits, and from the parties' respective Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### B. Procedural History

Plaintiff filed this action on September 10, 2007. PCR and the manager defendants answered on December 5, 2007, and Piscopo answered on January 15, 2008. On June 22, 2009, all defendants filed the instant motions for summary judgment. Plaintiff submitted her opposition on July 22, 2009. Defendants submitted their replies on August 3, 2009. Oral argument was held on September 18, 2009. Defendants submitted a letter on September 21, 2009, in order to address a case discussed during oral argument. Although plaintiffs objected on September 23, 2009 to the Court's consideration of defendants' letter, the Court has considered that letter and all other submissions of the parties.

## II. Standard of Review

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted). The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.,*

*Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

## III. DISCUSSION

Plaintiff alleges, under Title VII and the NYSHRL, that defendants subjected her to a hostile work environment on the basis of her gender, and further took retaliatory action against her when she complained about the harassment.[2] Plaintiff also alleges, under the ADA and the NYSHRL, that defendants discriminated against her on the basis of disability and retaliated against her for requesting a reasonable accommodation of her disability. Finally, plaintiff brings an assault

---

[2] Plaintiff's counsel made clear at oral argument that plaintiff's sex discrimination claim consists of a hostile work environment claim, as well as a retaliation claim allegedly arising from complaints about same.

and battery claim against Piscopo and, under a vicarious liability theory, against PCR for that tort. The Court examines each claim in turn.

## A. Sex Discrimination and Retaliation Claims[3]

### 1. Hostile Work Environment Claim

Plaintiff claims that defendants subjected her to a hostile work environment. Defendants contend that summary judgment is warranted on this claim because, even if the jury credited plaintiff's evidence with respect to these allegations, no rational jury could find that the alleged hostile work environment was attributable to plaintiff's gender. Defendants also argue that plaintiff did not subjectively believe her work environment was hostile. As set forth below, the Court disagrees and concludes, after a careful review of the evidence in the record and drawing all reasonable inferences in plaintiff's favor, that there are genuine issues of fact that preclude summary judgment on whether plaintiff was subjected to a hostile work environment based upon her gender and whether plaintiff subjectively believed her work environment was hostile.

---

[3] As noted above, in addition to alleging claims under Title VII, plaintiff alleges discrimination under the NYSHRL. The same standards governing Title VII discrimination claims generally apply to claims under the NYSHRL. *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714-15 (2d Cir. 1996); *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992).

### a. Legal Standard

In order to prevail on a hostile work environment claim, a plaintiff must satisfy two elements: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" *Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003) (quoting *Richardson v. N.Y. State Dept. of Correctional Services*, 180 F.3d 426, 436 (2d Cir. 1999)); *accord Terry v. Ashcroft*, 336 F.3d 128, 147 (2d Cir. 2003); *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir. 2000).

With respect to the first element, which determines whether or not a hostile work environment can be established, the Second Circuit has held that there is no "magic" threshold number of harassing incidents that is required as a matter of law. *See Richardson*, 180 F.3d at 439. Rather, a hostile work environment is determined by "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Howley*, 217 F.3d at 154 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Carrero v. New York City Hous. Auth.*, 890 F.2d 569, 577 (2d Cir. 1989)); *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 217-18 (E.D.N.Y. 2001) (holding that a "collection of administrative mixups, minor annoyances, and perceived slights cannot be considered severe or pervasive harassment").

"Isolated instances of harassment ordinarily do not rise to this level." *Cruz v.*

*Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "simple teasing . . . offhand comments, and isolated incidents (unless extremely serious)" will not amount to discriminatory changes in the "terms and conditions of employment") (internal citations and quotations omitted); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (noting that "[i]solated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment") (citation omitted); *Alfano v. Costello*, 294 F.3d 365, 380 (2d Cir. 2002) (finding the alleged conduct non-actionable when the incidents were "too few, too separate in time, and too mild . . . to create an abusive working environment"); *Brennan v. Met. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (holding that "[i]solated, minor acts or occasional episodes do not warrant relief"); *Williams v. County of Westchester*, 171 F.3d 98, 100 (2d Cir. 1999) (holding that "to meet [her] burden, the plaintiff must show more than a few isolated incidents" and "evidence solely of sporadic" discrimination does not suffice) (internal quotations omitted); *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 167-68 (S.D.N.Y. 2006) (finding isolated incidents of defendant calling plaintiff a "b****" and making sexual remarks over the course of her five and one-half years of employment insufficient to support a claim of discriminatory harassment); *Augustin v. Yale Club of N.Y. City*, No. 03 Civ. 1924 (KMK), 2006 WL 2690289, at *22 (S.D.N.Y. Sept. 15, 2006) (finding "four or five" comments over a five-year period insufficient to support a hostile work environment claim); *Mark v. Brookdale Univ. Hosp.*, No. 04 Civ. 2497 (JBW), 2005 WL 1521185, at *27 (E.D.N.Y. June 22, 2005) (finding two "alleged isolated remarks" by plaintiff's supervisor insufficient to establish claim); *Knight v. City of N.Y.*, 303

F. Supp. 2d 485, 500 (S.D.N.Y. 2004) (denying hostile work environment claim where incidents were "too remote"); *Pagan v. N.Y. State Div. of Parole*, No. 98 Civ. 5840 (FM), 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (finding that two racially derogatory remarks by supervisor directly to plaintiff did "not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment under Title VII") (citations omitted); *Upshur v. Dam*, No. 00 Civ. 2061 (DC), 2003 WL 135819, at **7-8 (S.D.N.Y. Jan. 17, 2003) (finding one week of "patronizing and racist comments" by supervisor insufficient); *Hawana v. City of N.Y.*, 230 F. Supp. 2d 518, 533 (S.D.N.Y. 2002) (finding single remark by supervisor insufficient); *Dorrilus v. St. Rose's Home*, 234 F. Supp. 2d 326, 335 (S.D.N.Y. 2002) (finding that supervisor's use of racially derogatory slur to refer to defendant on four or more occasions did not alter conditions of employment significantly enough to implicate Title VII); *Francis v. Chem. Bank. Corp.*, 62 F. Supp. 2d 948, 959 (E.D.N.Y. 1999) (dismissing hostile work environment claim where plaintiff only alleged four incidents).

The Second Circuit has noted, however, that "[w]hile the standard for establishing a hostile work environment is high, . . . [t]he environment need not be 'unendurable' or 'intolerable.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000)). Moreover, although a hostile work environment generally consists of "continuous and concerted" conduct, "a single act can create a hostile work environment if it in fact work[s] a transformation of the plaintiff's workplace." *Feingold v. N.Y.*, 366 F.3d 138, 150 (2d Cir. 2004) (quotations and citation marks omitted) (alteration in original). The point is that the conduct in question must be "severe or

pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Id*.

Finally, to succeed on a hostile work environment claim in the instant case, plaintiff must link the alleged harassment by defendants to plaintiff's gender. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . . because of . . . sex.'") (citing 42 U.S.C. § 2000e-2(a)(1)) (alterations in original); *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304, 306-07 (2d Cir. 1986) ("The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations.") (granting defendants' motion for summary judgment where plaintiffs alleged that supervisor's paramour received preferential treatment); *see also Nakis v. Potter*, No. 01 Civ. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004) (holding that "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable" under Title VII) (citing *Brennan*, 192 F.3d at 318 ("A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class.")).

b. Application

At all relevant times, plaintiff worked for the Inventory Control Manager at the PCR New York headquarters ("NYHQ"). (Pls.' 56.1 ¶ 1.) It is undisputed that, at one time, plaintiff and Piscopo had a dating relationship. Plaintiff asserts that this relationship ended in or around 2001 (Pls.' 56.1 ¶ 142; Sclafani Dep. at 48-49, 343) and

that several years of harassment by Piscopo followed. Defendants argue primarily that the alleged harassment in this case was not because of plaintiff's gender, but rather because of the tumultuous personal relationship she had with Piscopo.[4] The Court recognizes that, in some cases, harassment by a co-worker is not considered to be "based on sex" when it arises from a failed relationship. *See, e.g.*, *Succar v. Dade County Sch. Bd.*, 229 F.3d 1343, 1245 (11th Cir. 2000) ("Lorenz's harassment of [plaintiff] was motivated not by his male gender, but rather by Lorenz's contempt for [plaintiff] following their failed relationship; [plaintiff's] gender was merely coincidental."); *Galloway v. Gen. Motors*, 78 F.3d 1164, 1168 (7th Cir. 1996); *Doherty v. Nederlander Producing Co.*, No. 04 Civ. 3324, 2006 U.S. Dist. LEXIS 54125, at *16 (S.D.N.Y. Aug. 4, 2006); *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 263 (E.D.N.Y. 2005) ("Conduct motivated by personal animosity does not run afoul of Title VII's prohibition against altering the terms and conditions of employment because of sex . . . ."). *But see*

---

[4] Defendants conceded in their briefs and at oral argument that they do not dispute, for purposes of this motion, the alleged severity and/or pervasiveness of Piscopo's conduct, nor do they dispute the issue of whether PCR should be vicariously liable under Title VII for failure to exercise reasonable care to prevent or correct Piscopo's behavior. (Memorandum of Law in Support of Motion for Summary Judgment on Behalf of Defendants P.C. Richard & Son, Joe Van Glahn, Frank Riccardo, Bonni Richard Rondinello, and Steve Huff (hereinafter "PCR Defs.' Br.") at 2-3.; Memorandum of Law in Support of Defendant Jerry Piscopo's Motion for Summary Judgment (hereinafter "Piscopo Br."), at 3.) Accordingly, the Court need not recite all of the facts giving rise to plaintiff's hostile work environment claims.

*Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 229 (1st Cir. 2007) ("In cases involving a prior failed relationship between an accused harasser and alleged victim, reasoning that the harassment could not have been motivated by the victim's sex because it was instead motivated by a romantic relationship gone sour establishes a false dichotomy. Presumably the prior relationship would never have occurred if the victim were not a member of the sex preferred by the harasser, and thus the victim's sex is inextricably linked to the harasser's decision to harass.").

However, taking plaintiff's version of the facts as true, the evidence in the instant case does support a hostile work environment claim. In particular, plaintiff asserts that she ended the relationship with Piscopo in or around 2001. (Pls.' 56.1 ¶ 142.) After the end of the relationship, Piscopo allegedly harassed plaintiff on a frequent basis for a period of roughly five years. According to plaintiff, the harassment included numerous derogatory sexual comments and epithets (*see, e.g.*, *id.* ¶¶ 177-81) and culminated in an assault of plaintiff by Piscopo on August 9, 2006. (*Id.* 56.1 ¶¶ 189-93.) Furthermore, plaintiff contends that she complained about the harassment to supervisors several times. (*See id.* ¶¶ 164, 166, 173, 174-77, 180, 181, 185-86.) If all of those facts are credited, a jury could reasonably conclude that the harassment was not only pervasive, but was based on gender regardless of whether plaintiff and Piscopo had a prior relationship.

Defendants urge the Court to adopt a rule that, if an employee engages in a consensual relationship with a co-worker, *any* harassment following the termination of that relationship is not actionable when there is evidence that the harassing co-worker acted out of personal animosity or jealousy. The Court rejects that broad proposition. To hold otherwise would

effectively immunize from Title VII liability any sexual harassment following a failed relationship. *See Forrest*, 511 F.3d at 230 ("Nowhere does prior case law suggest that certain types of discriminatory behavior, held to constitute gender-based harassment in other cases, may not constitute gender-based harassment when the parties had previously engaged in a romantic relationship."); *accord Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1157 (S.D.N.Y. 2003) ("Boiled down to its essence, [defendant's] argument would mean that once a supervisor has engaged in a consensual relationship with an employee, he subsequently has carte blanche to harass that employee with impunity, even though the same behavior with respect to any other employee would constitute a Title VII violation. This argument makes little sense – prudentially or legally – and the Court rejects it."). If plaintiff's evidence is credited, the fact that Piscopo may have been motivated in part by personal animosity or jealousy does not change the fact that his harassment was sexual in nature, including, for instance, sexual epithets and derogatory comments about plaintiff's body. (*See* Pls.' 56.1 ¶ 173, 178-80.) *See Stepheny*, 356 F. Supp. 2d at 263 ("If the jilted lover seeks retribution through actions that are not gender- or race-based, Title VII is not implicated. If the conduct is gender- or race-based, it is."). Although defendants point to language in various other cases in an attempt to support their position, none of the cases cited by defendants involved pervasive sexual harassment spanning five years after the alleged end of a relationship with several alleged complaints to supervisors about the harassment during that time period, and even alleged harassing comments by a supervisor, as discussed below. Therefore, the Court concludes that, if a plaintiff presents evidence, as here, that the co-worker relationship was terminated and thereafter pervasive

harassment of a sexual nature continued over a substantial period of time despite complaints to supervisors, the existence of the prior relationship does not preclude a hostile work environment claim under Title VII as a matter of law.

Furthermore, plaintiff's hostile work environment claim is based not only on Piscopo's conduct following a failed relationship, but also on alleged harassment by plaintiff's supervisor Riccardo. (Pls.' 56.1 ¶¶ 166, 212.) At some point following Piscopo's August 9, 2006 assault, Riccardo stated to plaintiff, in the presence of a co-worker, that "you must be pretty good in bed for [Piscopo] to freak out like that" and that "maybe if [plaintiff] weren't so horny this wouldn't have happened." (Pls.' 56.1 ¶ 212; Sclafani Dep. at 192-93.) When plaintiff advised Riccardo on August 15, 2006 that she planned to take off from work for the next few days because she was still upset from the assault, Riccardo replied that plaintiff should "go out and do something fun, like get drunk or get a little." (Pls.' 56.1 ¶ 212; Sclafani Dep. at 190-91.) At some other unknown point in time, Riccardo made a sex-based comment to plaintiff about someone plaintiff had dated. (Pls.' 56.1 ¶ 166.) Defendants argue that these comments by Riccardo do not rise to the severe and/or pervasive standard necessary for a hostile work environment claim. (PCR Defs.' Br. at 12-13 n.4.) The Court disagrees and concludes that a jury could reasonably find that the harassing comments, if credited, were based on gender and, when considered together with Piscopo's conduct, do support a hostile work environment claim. *See Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (holding that even one instance of a sexually harassing tirade could give rise to a hostile work environment claim depending on the totality of the circumstances).

Finally, defendants argue that plaintiff cannot proceed on a hostile environment claim because she did not subjectively believe that her work environment was hostile. The Court finds, however, that plaintiff has raised a genuine factual dispute on this issue as well. Plaintiff testified at her deposition that Piscopo's harassment resulted in her "[l]iving in constant fear." (Sclafani Dep. at 106.) Plaintiff was "stunned" by Riccardo's harassing comments on August 15 and, during that time period, plaintiff was experiencing "headaches, literal shaking, panic fear." (Sclafani Dep. at 192.) Specifically, plaintiff testified that, following the August 9, 2006 assault, she began to suffer from post-traumatic stress disorder with "headaches, nightmares, nausea, constant fear, anxiety, depression." (Pls.' 56.1 ¶ 226; Sclafani Dep. at 322-23.) Defendants dispute plaintiff's version of events and argue that, despite plaintiff's testimony that the relationship ended in or around 2001 (*see* Sclafani Dep. at 48-49, 343), the evidence shows that plaintiff continued to have a relationship with Piscopo until August 2006 and that, at the very least, plaintiff considered Piscopo a friend. (*See* Sclafani Dep. at 379, 451.) Defendants cite to several examples of conduct by plaintiff after the alleged termination of the relationship in 2001 indicating that a relationship was in fact still ongoing, including plaintiff's making roughly 2,000 phone calls to Piscopo between 2001 and 2006. (Defs.' 56.1 ¶ 25.) Plaintiff disputes some of defendants' examples, and otherwise explains that she engaged in certain conduct to placate Piscopo out of fear. (*See* Pls.' 56.1 ¶¶ 21-22, 25-26.) For instance, with respect to the phone calls, plaintiff testified: "My calls to the defendant were done to protect myself, knowing that if I didn't return his calls regarding work-related calls I could be berated, yelled at . . . ." (Sclafani Dep. at 471.) Defendants essentially ask the Court to find plaintiff's explanation incredible as a

matter of law. The Court, however, declines to do so because such credibility assessments, are for a jury, not the Court, to decide. In short, plaintiff has submitted sufficient evidence to raise genuine issues of material fact that preclude summary judgment on the hostile work environment claim.

For the reasons set forth above, defendants' motions for summary judgment with respect to plaintiff's hostile work environment claims under Title VII and the NYSHRL are denied.[5]

## 2. Sex Discrimination Retaliation Claim

Plaintiff further claims that the defendants retaliated against her for complaining about the hostile work environment. For the reasons set forth below, defendants' motions for summary judgment with respect to this claim are denied.

### a. Legal Standard

Under Title VII, it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).

The Court evaluates a Title VII retaliation claim under the three-step, burden-shifting framework used for an adverse employment claim, as established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a plaintiff must establish a *prima facie* case of retaliation by demonstrating that "(1) the employee was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Gregory v. Daly*, 243 F.3d 687, 700 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)). In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action and if he carries that burden, it shifts back to plaintiff to demonstrate by competent evidence that the reasons proffered by defendant were pretext for retaliatory animus based upon the protected Title VII activity. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

The Supreme Court has defined an "adverse employment action" in the Title VII retaliation context (distinct from and broader than the standard in the Title VII discrimination context) to mean an action that is "materially adverse" and that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and*

---

[5] Defendants' only argument with respect to the liability of the individual defendants as aiders and abettors under the NYSHRL is that plaintiff has failed to show an underlying hostile work environment. (PCR Defs.' Br. at 21-22; Piscopo Br. at 14-15.) For the reasons discussed *supra* as to PCR, plaintiff has set forth sufficient evidence of a hostile work environment claim to survive summary judgment and, thus, the individual defendants' motion for summary judgment on that same ground is denied.

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations omitted). In particular, "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69.

Furthermore, under *Richardson v. New York State Department of Correctional Services*, 180 F.3d 426, 444 (2d Cir. 1999), *abrogated on other grounds by Burlington Northern*, 548 U.S. at 68, the Second Circuit held that "unchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that prong] of the retaliation *prima facie* case." *Id.* at 446; *see also McWhite v. N.Y. City Hous. Auth.*, No. 05 Civ. 0991 (NG) (LB), 2008 WL 1699446, at *11 (E.D.N.Y. Apr. 10, 2008) (applying *Richardson* to a retaliatory hostile work environment claim); *Brown v. N.Y. State Dep't of Corr. Servs.*, 583 F. Supp. 2d 404, 421-22 (W.D.N.Y. 2008) (denying summary judgment on Title VII retaliation claim in part on plaintiff's co-workers' alleged retaliatory acts and citing *Richardson*); *Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05 Civ. 5109 (JCF), 2007 WL 1149979, at *13 (Apr. 18, 2007) (considering a retaliatory hostile work environment claim).

Regarding the causal connection prong of the retaliation inquiry, a plaintiff may establish a causal connection between the protected activity and the adverse employment action either through direct evidence of retaliatory animus, or by circumstantial evidence. *See Sumner*, 899 F.2d at 209 (holding that causal connection may be "established indirectly with circumstantial evidence, for example, by showing that the protected activity was followed by discriminatory treatment or through evidence of disparate treatment of employees who engaged in similar conduct or directly through evidence of retaliatory

animus"). Where there is no evidence of retaliatory animus or a showing of disparate treatment of fellow employees who engaged in the same conduct, proof of causation may be shown indirectly, by demonstrating that the protected activity was followed closely by retaliatory action. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 217 (2d Cir. 1991) ("[T]he causal connection needed for proof of a retaliation claim 'can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.'") (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (internal citation omitted)). Although the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001), some district courts have generally concluded that "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, No. 03 Civ. 3522 (CPS), 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) (collecting cases). However, because the Second Circuit has found periods well beyond two months to be sufficient to suggest a causal relationship under certain circumstances, courts must carefully consider the time lapse in light of the entire record. *See, e.g.*, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (holding eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Richardson*, 180 F.3d at 446-47 (holding abusive acts within one month of receipt of deposition notices may be retaliation for

initiation of lawsuit more than one year earlier).

### b. Application

In the instant case, there are disputed issues of fact that preclude summary judgment on plaintiff's retaliation claim. Taking plaintiff's version of events as true, plaintiff engaged in protected activity by complaining about the alleged harassment to supervisors several times.[6] (*See* Pls.' 56.1 ¶¶

164, 166, 173, 174-77, 180-81, 185-86.) Such informal complaints to supervisors constitute protected activity under Title VII. *See Sumner*, 899 F.2d at 209 ("In addition to protecting the filing of formal charges of discrimination, [Title VII] protects as well informal protests of discriminatory employment practices, including making complaints to management . . . .").[7]

PCR's termination of plaintiff was clearly an adverse action. However, defendants argue that plaintiff has not shown a causal connection between that adverse action and any protected activity because the alleged complaints spanned several years and no adverse action was taken against plaintiff until her 2006 termination. The Court disagrees for the reasons set forth below.

In Title VII retaliation claims, a plaintiff may establish a causal connection between the

---

[6] Plaintiff also filed a formal discrimination complaint with the EEOC, which defendants concede was protected activity. Defendants argue, however, and the Court agrees, that there is no evidence that defendants had any knowledge of the EEOC complaint. The EEOC complaint was filed November 27, 2006 (*see* Pls.' 56.1 ¶ 92), and plaintiff was terminated on December 7, 2006 (*see* Pls.' 56.1 ¶ 83), but plaintiff points to no evidence to dispute the fact that defendants did not receive notice of the charge until December 11, 2006. (*See* Defs.' 56.1 ¶ 92; Defs.' Ex. C; Pls.' 56.1 ¶ 92.) *See Revere v. Bloomingdale's, Inc.*, No. 03 CV 5043 (SLT)(WDW), 2006 WL 3314633, at *9 (E.D.N.Y. Nov. 14, 2006) ("[T]he protected activity must be *known* to the defendant. Plaintiff has not shown that [defendant] was aware that Plaintiff filed a complaint with the EEOC when they fired her on December 10, 2002. Based on the evidence in the record, [defendant] first became aware that Plaintiff filed her complaint on December 20, 2002, 10 days after Plaintiff was terminated, when [defendant] received official notice from the EEOC that a charge had been filed.") (emphasis in original). Plaintiff argues that the temporal proximity of the filing of the charge and her termination raises an inference of retaliation. However, plaintiff must also show that defendant was aware of the protected activity, *see Gregory*, 243 F.3d at 700, such knowledge on the part of a defendant "cannot be shown by inferences alone." *Revere*, 2006 WL 3314633, at *9 (citation and quotation marks omitted). Plaintiff points to no such evidence in her papers

and, at oral argument, when the Court asked plaintiff's counsel if there was any evidence that defendants knew about the EEOC charge, plaintiff's counsel was unable to point to any such evidence. Therefore, to the extent plaintiff alleges retaliation based on her filing of the EEOC complaint, plaintiff's claim is without merit. However, as discussed above, the protected activity may be based on the informal complaints.

[7] Defendants argue that the complaints were not protected activity because plaintiff repeatedly declined to take the complaints to PCR's human resources department. The Court finds that any failure to go to the human resources department does not defeat plaintiff's claim on summary judgment. The Court also notes that, under PCR's Employee Handbook, employees are encouraged to report harassment to "their immediate supervisor/manager, a member of senior management, *or* a member of the Human Resources department immediately." (Pls. Ex. 21, at 19 (emphasis added); Pls.' 56.1 ¶ 120.)

11

protected activity and the adverse employment action either through direct evidence of retaliatory animus or by circumstantial evidence. *See Sumner*, 899 F.2d at 209. Plaintiff has provided circumstantial evidence that, if believed by the jury, would allow an inference that plaintiff was terminated in retaliation for her complaints of harassment. Specifically, plaintiff asserts that at one point when she raised complaints about Piscopo to her supervisor Van Glahn, she was told that "nothing would probably be done because, for whatever reason, Piscopo is untouchable." (Pls.' 56.1 ¶ 132; Sclafani Dep. at 100-01.) Indeed, even after the August 9, 2006 incident in the parking lot, Piscopo was not terminated but returned to work after a 30-day suspension and anger management counseling. (Pls.' 56.1 ¶ 69.)[8] Although they ultimately decided not to do so, defendants discussed, in plaintiff's presence, putting plaintiff on final warning following the August 9, 2006 assault. (Sclafani Dep. at 169-70.) According to plaintiff, when plaintiff asked Riccardo and Huff why she would be given final notice, neither responded. (*Id.*) Riccardo testified that defendants considered putting plaintiff on

warning because "[e]nough is enough of [plaintiff's and Piscopo's] relationship interfering with work." (Pls.' 56.1 ¶ 204; Riccardo Dep. at 131-32.) Plaintiff also contends that, when she told Riccardo that she needed to take some days off from work following the assault, Riccardo made harassing sex-based comments, as discussed *supra*. (Pls. 56.1 ¶¶ 211-12.)

In addition, plaintiff was terminated about four months after the assault and her assault-related complaints. The temporal proximity between plaintiff's complaints following the August 9, 2006 assault and her December 7, 2006 termination, when combined with the other evidence in the record, is sufficient to survive summary judgment on the issue of causal connection. *See, e.g.*, *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and the adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment."). Although plaintiff allegedly complained about the harassment for several years, and was not terminated until 2006, she was terminated relatively shortly after the assault-related complaints. Given the alleged harassment of plaintiff following her complaints, defendants' alleged favoritism toward Piscopo, and the temporal proximity of plaintiff's assault-related complaints and her termination, a reasonable jury could conclude that plaintiff was terminated in retaliation for her complaints.

Plaintiff also argues that defendants subjected her to a hostile work environment in retaliation for her complaints. In order to establish a retaliatory hostile work environment, a plaintiff must satisfy the same standard that is applied generally to hostile

---

[8] Defendants point out that plaintiff specifically requested that Piscopo not be terminated and admitted this at her deposition. (Sclafani Dep. at 165 ("Q. So basically your position was if Jerry left you alone, didn't call you, didn't approach you, as you just described it, you would be satisfied that he not be fired? A. Yes.").) However, plaintiff has also presented evidence that defendants did not want to terminate Piscopo in any event. (Huff Dep. at 33-34 ("Q. Do you recall what [Riccardo and Rondinello] said to you in regard to your opinion that [Piscopo] should be fired? A. The situation warranted it, although [Piscopo] was a long-term employee [and] no one wanted to do it, both [Sclafani] and [Piscopo] were long time employees.").)

work environment claims regarding the severity of the alleged conduct. *See, e.g., Rasco v. BT Radianz*, No. 05 Civ. 7147 (BSJ), 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2009) ("To establish that a retaliatory hostile work environment constitutes a materially adverse change that might dissuade a reasonable worker from reporting activity prohibited by Title VII, a plaintiff must satisfy the same standard that governs hostile workplace claims by showing that the incidents of harassment following complaints were sufficiently continuous and concerted to have altered the conditions of his employment."); *Faison v. Leonard*, No. 08 Civ. 2192 (PKC), 2009 WL 636724, at *4 (S.D.N.Y. Mar. 9, 2009) (same); *McWhite*, 2008 WL 1699446, at *13; *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("An allegedly retaliatory act must rise to some level of substantiality before it can be actionable. The hostile work environment doctrine, as developed in the anti-discrimination jurisprudence of Title VII, embodies that prerequisite.") (citation omitted); *Rigau v. Pfizer Caribbean Corp.*, 525 F. Supp. 2d 272, 287 (D.P.R. 2007) (same).

Plaintiff has presented evidence that she faced a hostile work environment in retaliation for her complaints of harassment, including the following: On August 8, 2006, in response to a complaint by plaintiff to Van Glahn, Piscopo berated plaintiff with a sexual epithet. (Pls.' 56.1 ¶¶ 178-79; Sclafani Dep. at 120-21.) Following that incident on the same day, Piscopo grabbed plaintiff's sweater arm sleeve and threatened to go to plaintiff's work area and to "kill everybody." (Pls.' 56.1 ¶¶ 185-86; Sclafani Dep. at 125-26.) On August 9, 2006, just before assaulting plaintiff, Piscopo screamed at plaintiff that she had "a big mouth" and that she should "keep [her] mouth shut," and berated her with

sexual comments. (Pls.' 56.1 ¶ 192; Sclafanilfani Dep. at 140-41.) Several days after the assault, when plaintiff stated to Riccardo that she needed to take some days off from work because she was still upset, Riccardo made harassing sex-based comments. (Pls.' 56.1 ¶¶ 211-12.)

If these facts are proven, a reasonable jury could conclude that the incidents of harassment *following plaintiff's complaints* were sufficiently continuous and concerted to have altered the conditions of her employment. Furthermore, plaintiff has put forth evidence that, if credited, a reasonable jury could find to causally connect, directly or indirectly, her complaints to the exacerbation of the workplace hostility that was the initial subject of her complaints. In short, because plaintiff has sufficiently set forth evidence from which a reasonably jury could find that a hostile work environment existed and also that a causal connection existed between this purported hostile work environment (or the alleged adverse action) and her complaints, summary judgment on the claim of retaliation is unwarranted.[9]

---

[9] As one court has noted, there is a question as to whether, after the Supreme Court's decision in *Burlington Northern*, the standard for showing a retaliatory hostile work environment is less than the standard for a traditional hostile work environment claim because a plaintiff need only show "a materially adverse action" for a retaliation claim, rather than an "adverse employment action." *See Khan v. HIP Centralized Lab. Servs., Inc.*, No. 03 Civ. 2411 (DGT), 2007 WL 1011325, at *9 (E.D.N.Y. Mar. 30, 2007) ("It is . . . unclear whether the Supreme Court's decision in *Burlington Northern*, 126. S.Ct. 2405, altered the standard for retaliatory hostile work environment claims."). In other words, if such a difference exists, a plaintiff could theoretically be subject to materially adverse actions that "might have

### B. Disability Discrimination
### and Retaliation Claims

Defendants move for summary judgment on plaintiff's disability discrimination and retaliation claims under the ADA and the NYSHRL.[10]

On August 15, 2006, plaintiff spoke to Leah Koch, PCR's employee benefits manager, about the August 9, 2006 assault and its aftermath. Among other things, Koch encouraged plaintiff to speak with her physician and to consider a leave of absence under the Family Medical Leave Act ("FMLA"). (Pls.' 56.1 ¶ 73.) After taking a few days off, plaintiff returned to work on August 21 and submitted a request for FMLA leave to begin August 16 and to end November 8, 2006. (Pls.' 56.1 ¶ 75.) On August 16, 2006, plaintiff's physician ("Mandarano") had diagnosed her as having post-traumatic stress disorder. (Pls.' 56.1 ¶ 78; Mandarano Dep. at 53-54.) PCR

_____

dissuaded a reasonable worker from making or supporting a charge of discrimination," *Burlington Northern*, 126 U.S. at 77 (quotations and citations omitted), but not "sufficiently severe or pervasive," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986), to alter the conditions of plaintiff's employment. Of course, since plaintiff has already overcome summary judgment under the potentially higher standard applicable to hostile work environment claims, it is immaterial for the purposes of this motion which standard applies.

[10] The legal standards, as relevant here, for discrimination claims under the ADA and the NYSHRL are essentially the same, and so the Court's discussion of the federal ADA claims applies to the state claims as well. *Rogers v. N.Y. Univ.*, 250 F. Supp. 2d 310, 313 n.4 (S.D.N.Y. 2002).

approved plaintiff's request for leave by letter dated August 23, 2006. (Pls.' 56.1 ¶ 75.) On October 27, 2006, Mandarano explicitly told plaintiff that she could never return to work at the location of the August 9, 2006 assault. (Pls.' 56.1 ¶ 78.) The record is unclear as to whether defendants were informed of Mandarano's conclusion.

On October 30, 2006, plaintiff had a phone call with Koch, although she does not remember what it was about. (Sclafani Dep. at 206-07.) By letter dated October 31, 2006, plaintiff wrote Koch: "Please be advised that I am coming off FMLA as of November 8th, 2006 and will continue short term disability as you are aware, with the expectation of returning to work upon my treating physician's recommendation on or before February 1, 2007." (Pls.' 56.1 ¶ 76; Pls.' Ex. 15.) Plaintiff also stated: "As such, this confirms your understanding of this, as per our conversation on October 30, 2006." (Pls.' Ex. 15.) Koch responded to plaintiff by letter dated November 8, 2006, stating: "Although we spoke on October 30, 2006, you did not advise me of a date on which you intended to return to work, and I did not agree to extend your leave until February 1, 2007." (Pls.' 56.1 ¶ 79; Pls.' Ex. 16.) Koch concluded:

> As you confirm in your letter, your leave pursuant to the FMLA expires on November 8, 2006, and pursuant to its FMLA policy, P.C. Richard & Son can only guarantee reinstatement to your former or an equivalent position if you return by the expiration of your leave date. We cannot hold open your position until February 1, 2007. However the company is willing to discuss pending possible reasonable accommodations, including a medically necessary brief extension

of your leave. We look forward to hearing from you.

(*Id.*) Rondinello, the PCR NYHQ human resources manager, testified that if plaintiff had responded to defendant's November 8 letter with medical documentation for her condition, defendants would have considered giving her an additional "couple weeks" or until the end of November. (Rondinello Dep. at 65-66.) Rondinello also testified that neither she nor Leah Koch told plaintiff the specific amount of additional leave time she might have received. (*Id.*) On November 22, 2006, counsel for PCR wrote plaintiff's counsel, stating that PCR "is willing to grant a reasonable extension to [Sclafani's] leave. However it cannot extend Ms. Sclafani's leave until February 1, 2007 . . . . To discuss these matters, please feel free to call me." (Pls.' 56.1 ¶ 216; Pls.' Ex. 17.)

On December 7, 2006, plaintiff was advised: "Since you have not responded to our letter dated November 8, 2006 and two phone calls placed to your attorney this week have gone unanswered, we are considering that you have resigned your position from P.C. Richard & Son, effective the date of this letter." (Pls.' 56.1 ¶ 83.) Plaintiff provides no evidence that plaintiff, or any representative of plaintiff, contacted PCR at any time between the November 8 and December 7, 2006 letters. (Defs.' 56.1 ¶ 85.)[11] By letter dated December 13, 2006, plaintiff's counsel wrote counsel for PCR, stating that he missed the phone calls from PCR's counsel because he was out of the office on December 7 and

December 8, 2006. (Pls.' Ex. 8.) Plaintiff's counsel's letter further states that PCR's counsel did not leave a message with the receptionist or tell the receptionist what the call was regarding. (*Id.*) The letter also states that plaintiff "did not resign her position." (*Id.*) By letter dated December 16, 2006, plaintiff herself wrote PCR stating: "I in no way voluntarily resigned my position." (Pls.' 56.1 ¶ 87.)

Rondinello testified that plaintiff's position at the NYHQ was, for some period of time during plaintiff's absence, filled by a temporary worker, after which, at some point in time, a permanent worker was hired. (Rondinello Dep. at 68-69.) As of January 12, 2007, Mandarano did not know when plaintiff would be able to return to work. (Defs.' 56.1 ¶ 89; Mandarano Dep. at 112-13.) As of February 12, 2007, Mandarano stated that plaintiff had "recovered enough to return to work full time" with "no restriction except not at previous place of employment." (Defs.' 56.1 ¶ 89; Defs.' Ex. 46; Pls.' 56.1 ¶ 89.) It is unclear from the record whether defendants had knowledge of Mandarano's opinions.

1. Disability Discrimination Claim

a. Legal Standard

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The statute defines 'discriminate' to include 'not making reasonable accommodations to the known physical or mental limitations of an

---

[11] Although plaintiff "controverts" this statement, the only evidence plaintiff presents is a letter to PCR from plaintiff's attorney dated December 13, 2006 (Pls.' 56.1 ¶ 85; Pls.' Ex.8.), which is after plaintiff's termination on December 7, 2006.

otherwise qualified individual with a disability.'" *Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 104 (2d Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)).

To establish a *prima facie* case for failure to accommodate under the ADA, an employee has the burden to demonstrate that: "1) he was an 'individual who has a disability' within the meaning of the statute; 2) the employer had notice of his disability; 3) he could perform the essential functions of the job with reasonable accommodation; and 4) the employer refused to make such accommodation." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000). If plaintiff establishes a *prima facie* case, the burden shifts to the employer "to demonstrate that the . . . proposed accommodation would have resulted in undue hardship." *Id.* As the Second Circuit has noted, "[d]iscrimination under the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.'" *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (quoting 42 U.S.C. § 12112(b)(5)(A)).

### b. Application

Plaintiff asserts that PCR and the manager defendants discriminated against her on the basis of disability because they failed to accommodate her request for an extension of her leave following the August 9, 2006 assault.[12] Defendants argue that summary

judgment is warranted because, *inter alia*, there is no factual dispute that, even if defendants had accommodated plaintiff's requested extension of leave, plaintiff was unable to continue working in her job at the PCR NYHQ. For the reasons set forth below, the Court agrees and grants defendants' motion for summary judgment on plaintiff's disability discrimination claim.

Plaintiff's doctor, Mandarano, explicitly told plaintiff on October 27, 2006 that she should never return to work at the location of the August 9 assault. (Pls.' 56.1 ¶ 79; Mandarano Dep. at 106-08.) On February 12, 2007, Mandarano stated in a note that although plaintiff could return to work "without restrictions," she could not do so at her "previous place of employment." (Defs.' Ex. 46.) Plaintiff does not dispute these facts.[13] Therefore, even if plaintiff was given the requested additional leave time, she was not qualified to return to her job assisting the inventory control manager at the PCR NYHQ.[14] (Pls.' 56.1 ¶ 1.) A disabled

---

Thus, Piscopo's motion for summary judgment on any such claims is moot.

[13] Plaintiff argues that "she was qualified to return to her position upon the expiration of her leave," citing Mandarano's February 12, 2007 note. (Pls.' Br. at 19.) Plaintiff quotes from Mandarano's statement as follows: "Lisa is able to return to full time employment. She was disabled 8/16/06 when she was assaulted by a fellow employee (ex-boyfriend). She has recovered enough to return to work full time, no restrictions . . . ." (*Id.*) Plaintiff's ellipses, however, omit the critical limit on plaintiff's ability to return to work, namely, that there was no restriction "except *not at previous place of employment*." (Defs.' Ex. 46 (emphasis added).)

[14] Although plaintiff does not explicitly make the argument, to the extent plaintiff argues that she could have been reasonably accommodated by taking a position at some other PCR location, the

---

16

individual is "qualified" for a particular position only if she "can perform the essential functions of the job with or without reasonable accommodation." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) (citing *Shannon v. N.Y. City Transit Auth.*, 332 F.3d 95, 99-100 (2d Cir. 2003)). Because plaintiff has presented no evidence that, despite Mandarano's conclusions, she could perform the essential functions of her job at the NYHQ inventory control office if given the extended

_____

Court rejects such claim. "[A] plaintiff seeking to hold the employer liable for failing to transfer her to a vacant position as a reasonable accommodation must demonstrate that there was a vacant position into which she might have been transferred." *Jackan v. N.Y. Dep't of Labor*, 205 F.3d 562, 567 (2d Cir. 2000). A plaintiff has the burden of production and persuasion on this issue, and the "burden of persuasion on the 'existence' of an 'effective accommodation' is not satisfied by mere speculation." *Id.* at 566. In this case, plaintiff has presented no evidence whatsoever that there was some other job at a different PCR location for which plaintiff was qualified. For instance, Mandarano testified: "Q. Isn't it correct that, apparently four days before this [plaintiff's October 30, 2006] letter was issued, you had told her you never wanted her to return to that location? A. To that particular location. Q. Right. A. Yes. That's my understanding that P.C. Richard's has more than one location. Q. Did you know what her job was? A. No. Q. Did you know if the work that she was doing was being done at more than one location? A. No, I have no knowledge of that." (Mandarano Dep. at 107.) Therefore, any claim by plaintiff that defendants violated the ADA by failing to transfer her to another location cannot survive summary judgment because it has no evidentiary support. *See Rogers*, 250 F. Supp. 2d at 316 ("Since plaintiff bears the burden of demonstrating that a suitable opening was available, [plaintiff] has failed to carry her burden that accommodation by transfer existed and any claim for failure to transfer [plaintiff] rather than terminate her is dismissed.").

leave, her claim must fail. *See McBride v. BIC Consumer Prod. Mfg. Co.*, No. 07-5689-cv, 2009 WL 3163218, at *4 (2d Cir. Oct. 5, 2009) ("Putting aside for the moment the possibility of reassignment to a vacant position, [plaintiff] entirely failed to present any evidence of an accommodation that would have allowed her to perform the essential functions of her pre-disability position.").

Plaintiff also argues that PCR failed to engage in an interactive process to accommodate her disability. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Jackan*, 205 F.3d at 566. Defendants argue that plaintiff caused the interactive process to fail because she never responded to Koch's letter of November 8. Although Koch's November 8 letter clearly states that PCR was willing to discuss a brief extension of leave (Pls.' Ex. 16), as does the letter from PCR's counsel on November 22, 2006 (Pls.' Ex. 17), plaintiff points to deposition testimony from Rondinello indicating that plaintiff was not told specifically how much additional leave time she might be offered. (Pls.' Br. at 20; Pls.' 56.1 ¶¶ 221-22.) In addition, defendants have presented no evidence that they investigated plaintiff's medical condition or that they were aware of Mandarano's opinion. *See Parker*, 204 F.3d at 338 ("At the very least, . . . an employee who proposes an accommodation while still on short-term leave – as [plaintiff] did here, at least two weeks prior to his termination – triggers a responsibility on the employer's part to investigate that request and determine its feasibility. An employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability within the meaning of the ADA."). On the current record, because of the disputed issues of fact, the Court cannot determine as a matter of law whether plaintiff

or defendants caused the interactive process to fail.

However, even assuming *arguendo* that defendants caused the interactive process to fail, that by itself is not enough to defeat defendants' motion for summary judgment with respect to plaintiff's disability discrimination claim. As the Second Circuit recently held: "an employer's failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue." *McBride v. BIC Consumer Prod. Mfg. Co.*, No. 07-5689-cv, 2009 WL 3163218, at *6 (2d Cir. Oct. 5, 2009). Because plaintiff has not shown that she was qualified for her job at the PCR NYHQ even with some accommodation, defendants' motion for summary judgment on plaintiff's disability discrimination claim is granted.[15]

### 2. Disability Retaliation Claim

Plaintiff also asserts that defendants retaliated against her for requesting a reasonable accommodation of her disability. For the reasons set forth below, defendants' motion for summary judgment on this claim is denied.[16]

#### a. Legal Standard

As with the discrimination claims, a claim of retaliation is analyzed under the three-step burden-shifting analysis of *McDonnell Douglas*. *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002); *Lovejoy-Wilson v. Noco Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases.") To establish a *prima facie* case of retaliation, a plaintiff must demonstrate by a preponderance of the evidence that: (1) she engaged in an activity protected by the ADA; (2) the employer was aware of her activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action. *Sista*, 445 F.3d at 177; *see also Treglia*, 313 F.3d at 719. The Second Circuit has characterized the evidence necessary for the plaintiff to satisfy this initial

---

[15] Because plaintiff has failed to show that she was qualified to perform the essential functions of her job with a reasonable accommodation, the Court need not consider, for purposes of this claim, defendants' motivation for terminating plaintiff or whether defendants in fact knew that plaintiff was not qualified to return to work. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 923 n.2 (7th Cir. 2001) ("[T]he dispute [over the meaning of certain letters concerning plaintiff's medical leave] is immaterial, however, because it is relevant only to a determination of [defendant's] motive for terminating [plaintiff]. We need not consider [defendant's] motive because we find that [plaintiff] was not a 'qualified individual with a disability' under the ADA.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[16] Plaintiff can proceed on her disability retaliation claim even though her garden-variety disability discrimination claim fails. *See Gold v. Carus*, 113 F. App'x 748, 750 (2d Cir. May 16, 2005) ("[A] successful discrimination claim is not a predicate for a retaliation claim."); *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) ("[E]ven if [plaintiff] has failed to prove that there was a violation of the ADA, the defendant may still have retaliated against [plaintiff] for engaging in protected conduct.").

burden as "minimal" and "de minimis." *See Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001).

In determining whether a plaintiff has satisfied this initial burden, the court's role in evaluating a summary judgment request is "to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute v. Hamilton Sunstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Further, as stated above, once a plaintiff has set forth a *prima facie* case, the burden shifts to defendants to show that they had a legitimate, non-discriminatory reason for the adverse employment action. *Sista*, 445 F.3d at 169. If such a showing is made, the burden shifts back to plaintiff to prove that the proffered reason is merely a pretext for unlawful discrimination. *Id.*

### b. Application

Plaintiff's request for additional leave time as an accommodation of her disability constituted protected activity under the ADA, *see Weixel*, 287 F.3d at 148, and plaintiff's termination was clearly an adverse action. As for the necessary causal connection, plaintiff argues that the one-month period between her October 30 request for additional leave time and her December 7 termination supports an inference of retaliation that establishes a prima facie case. The Court agrees. *See Treglia*, 313 F.3d at 721 ("The temporal proximity between this protected activity in February 1998 and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link for a prima facie case."). Plaintiff also argues that defendants failed to engage in an interactive process regarding her request, indicating that defendants "did not want Sclafani to return and her termination was inevitable." (Pls.' Br. at 21.) For the reasons discussed below, the Court finds that disputed issues of fact as to the interactive process between the parties precludes summary judgment on plaintiff's claim.

Defendants argue that plaintiff was unable to perform the essential functions of her job, that plaintiff's request for leave was unreasonable, and that it was plaintiff who caused the interactive process to fail.[17] Defendants' arguments are unavailing. First, the fact that plaintiff was unable to perform the essential functions of her job is not relevant to her retaliation claim. *See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1210-11 (10th Cir. 2007) ("[I]n the context of a retaliation claim, the crucial question is not whether [plaintiff] can in fact perform the essential functions of his job. The relevant question is whether [plaintiff] can show that [defendant's] motive for taking adverse action was its desire to retaliate for the protected activity. In other words, we must determine whether [defendant] treated [plaintiff] differently because he filed administrative charges of disability discrimination, not whether [defendant] correctly concluded that he could not perform the essential functions of his job."); *see also Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993) ("Title VII is violated when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist."). Defendants have not shown that they knew plaintiff was unable to perform the essential functions of her job, and so this fact cannot bear on their motivation for the termination.

---

[17] Defendants do not specifically address plaintiff's disability retaliation claim, but do argue generally that plaintiff's "disability discrimination claim, in whatever form she is asserting it, must fail for several reasons." (PCR Defs.' Br. at 19.) Therefore, in deciding this claim, the Court considers the same arguments defendants made with respect to the disability claim.

Second, the Court cannot conclude as a matter of law that the request for leave was unreasonable. A request for a leave of absence is unreasonable "only in unusual circumstances." *Powers v. Polygram Holding, Inc.*, 40 F. Supp. 2d 195, 201 (S.D.N.Y. 1999). Although a request for an indefinite leave of absence may in some circumstances be unreasonable, *see Donofrio v. N.Y. Times*, 99 Civ. 1576 (RCC)(JCF), 2001 U.S. Dist. LEXIS 13788, at *16 (S.D.N.Y. Aug. 24, 2001), plaintiff in this case informed the company of her "expectation of returning to work upon [her] treating physician's recommendation on or before February 1, 2007." (Pls.' Ex. 15.) Although the return date was dependent on her doctor's recommendation, that does not make the request unreasonable. *See Powers*, 40 F. Supp. 2d at 202 ("[N]o person recovering from clinically diagnosed mental illness, especially while suffering symptoms of this illness, can give an absolute date as to when his symptoms will ameliorate to the point that he will be able to return to work. To require such certainty, and to read such a requirement into the principle that an employer need not wait an indefinite period for an accommodation to achieve its intended effect would be to eviscerate much of the protection afforded under the ADA.") (internal citation and quotation marks omitted); *see also Rogers*, 250 F. Supp. 2d at 315 (holding that the defendant's argument that plaintiff's "predicted return date was too far off to be considered more than tentative . . . simply raise[s] issues of fact to be decided at trial"). Similarly, whether holding plaintiff's job open for that period of time with the assistance of a temporary worker (Pls.' 56.1 ¶ 225) was reasonable is a question for the jury. *See Rogers*, 250 F. Supp. 2d at 317.

Finally, as discussed *supra*, even though plaintiff failed to respond to defendants' November 8 and November 22, 2006 letters, the Court cannot conclude as a matter of law

that plaintiff caused the interactive process to fail. Plaintiff made a request for leave, which defendants denied. Although defendants invited further discussion, they did not tell plaintiff how much additional leave time she might get after such further discussion. Defendants have not shown that there was any investigation into plaintiff's medical condition. *See Parker*, 204 F.3d at 338. Because of these issues of fact, the Court cannot conclude as a matter of law that plaintiff was not terminated in retaliation for her request for additional leave time.

Plaintiff has thus established a *prima facie* claim of disability retaliation. Defendants respond that plaintiff was terminated for a legitimate and non-discriminatory reason, namely, her failure to comply with company policy based on her failure to provide a firm acceptable date to return to work. (PCR Defs.' Br. at 20.) The Court concludes, however, that given the dispute over the reasonableness of plaintiff's request for leave, the unclear nature of the interactive process (particularly the open question of whether defendants knew plaintiff was in fact never able to return to her job at the PCR NYHQ), and the temporal proximity of plaintiff's request and her termination, that disputed issues of fact preclude summary judgment on this issue. If plaintiff's version of the events is credited and all reasonable inferences are drawn in her favor, a reasonable jury could find that defendants acted with retaliatory intent in terminating plaintiff. Therefore, defendants' motion for summary judgment on plaintiff's disability retaliation claim is denied.

## C. Assault and Battery Claim

Finally, defendants move for summary judgment with respect to plaintiff's state law assault and battery claim against Piscopo and

PCR.[18]  PCR does not dispute that an assault and battery occurred, but instead argues that PCR cannot be held liable for that tort under a *respondeat superior* theory.  For the reasons discussed below, the Court agrees and PCR's motion is granted with respect to this claim.

According to plaintiff, on August 9, 2006, before work began, Piscopo was in the PCR parking lot bringing paperwork to the NYHQ.  (Pls.' 56.1 ¶¶ 189-90.)  When Piscopo saw plaintiff in the parking lot, he blocked her from entering the building, screamed at her, and then choked her.  (*Id.* ¶¶ 191-93.)  Piscopo later pled guilty to menacing in the third degree.  (Pls.' 56.1 ¶ 210.)  As discussed *supra*, plaintiff has submitted evidence that she had already complained about Piscopo's harassment several times prior to the August 9th assault.  For example, plaintiff asserts that, on August 8, 2006, she had told Van Glahn that Piscopo had grabbed her sweater and threatened to go to plaintiff's work area and "kill everybody."  (*Id.* ¶¶ 185-86.)

"Under the doctrine of respondeat superior, an employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment."  *N.X. v. Cabrini Med. Ctr.*, 765 N.E.2d 844, 846-47 (N.Y. 2002) (affirming grant of summary judgment for hospital defendant where patient claimed that defendant was vicariously liable for sexual assault by doctor).  Intentional torts are sometimes considered to be within the scope of employment when they are reasonably foreseeable.  *See Riviello v. Waldron*, 391 N.E.2d 1278, 1282 (N.Y. 1979) ("[W]here the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment.") (collecting cases).  For an intentional tort to be considered within the scope of employment, however, it must in some broad sense further the employer's business.  Torts committed wholly for an employee's personal motives do not fall within the scope of employment.  *See Cabrini Med. Ctr.*, 765 N.E.2d at 847 ("This was a sexual assault that in no way advanced the business of the hospital."); *cf. Ramos v. Jake Realty Co.*, 801 N.Y.S.2d 566, 568 (App. Div. 2005) (holding that landlord defendant could be vicariously liable for the building superintendent's assault of tenant who was actively involved in rent strike) ("There is no evidence that the superintendent had any personal motivation for the assault.").  An employer is not liable for a tort committed by an employee for his own personal motives even when the tort might be reasonably foreseeable.  *See Fernandez v. Rustic Inn, Inc.*, 876 N.Y.S.2d 99, 102 (App. Div. 2009) ("*Regardless of whether it is generally foreseeable* . . . , it cannot be said that Mills was acting within the scope of his employment in committing an assault completely unrelated to the furtherance of defendant's business.") (emphasis added) (reversing trial court's denial of summary judgment where plaintiff was assaulted by defendant's employee using a work-related box-cutter after a work party and away from the premises); *see also Ierardi v. Sisco*, 119 F.3d 183, 188 (2d Cir. 1997) ("[E]ven if it is assumed – solely for purposes of argument – that the [alleged sexual harassment] falls within the ambit of general foreseeability as

---

[18] Piscopo argues that the Court should dismiss the assault and battery claim against him because there are no proper federal claims in this action and that the Court should decline to exercise supplemental jurisdiction over the state law claim.  For the reasons discussed *supra*, the Court denies defendants' motion for summary judgment on plaintiff's Title VII claims, and, therefore, properly exercises jurisdiction over the pendent state tort claim.  Thus, Piscopo's motion for summary judgment on the assault and battery claim is denied.

that term is used in *Riviello*, it may not be legitimately urged that what [defendant] is said to have done is 'commonly done' by correction officers, or is other than a marked departure 'from the normal methods of performance' utilized by such employees in discharging their duties.") (finding defendant's conduct outside the scope of his employment for purposes of immunity) (citing *Riviello*, 391 N.E.2d at 1281).

If plaintiff's facts are credited, a rational jury could find that Piscopo's assault was reasonably foreseeable, but a rational jury could not find that the assault was within the scope of Piscopo's employment at PCR. Although the assault occurred in the PCR parking lot before work, the assault in no way furthered PCR's business. *See Cabrini Med. Ctr.*, 765 N.E.2d at 847. Instead, it was committed wholly for Piscopo's personal motives. Therefore, whether the assault was reasonably foreseeable is not dispositive of the issue of liability for PCR. *See Fernandez*, 876 N.Y.S.2d at 102. In sum, because the undisputed facts demonstrate that the assault was not within the scope of Piscopo's employment, PCR cannot be held liable for it under a *respondeat superior* theory.[19]

_____

[19] The issue of whether PCR should be directly liable for any negligence of its own in failing to take reasonable precautions against such an assault would be relevant to a claim of negligent supervision or retention against PCR. Plaintiffs do not assert such a claim, however, and in any event such a claim would be barred by New York law. *See Schiraldi v. AMPCO Sys. Parking*, 9 F. Supp. 2d 213, 219 (W.D.N.Y. 1998) (holding under New York law that defendant employer was not vicariously liable for sexual assault of employee by co-worker (citing *Ierardi*, 119 F.3d at 188), and that plaintiff's claim of negligence against defendant for negligently allowing the assault to occur was barred by state law) ("It is well-settled that negligence claims against an employer arising out of employment are governed exclusively by

Therefore, the motion by PCR for summary judgment with respect to this claim is granted.

IV. CONCLUSION

For the reasons set forth above, defendants' motions for summary judgment are granted in part and denied in part. Specifically, defendants' motions for summary judgment on plaintiff's Title VII and NYSHRL sex discrimination and retaliation claims are denied. PCR's and the manager defendants' motions with respect to plaintiff's disability discrimination claim are granted, but their motions with respect to plaintiff's disability retaliation claim are denied. PCR's motion for summary judgment on plaintiff's assault and battery claim is granted. Piscopo's motion for summary judgment on the assault and battery claim is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: November 10, 2009
        Central Islip, NY

* * *

The attorney for plaintiff is Scott Michael Mishkin, PC, by John Nicolas Forte, One Suffolk Square, Suite 240, Islandia, New York 11749. The attorneys for defendants are Jackson Lewis LLP, 58 South Service Road, Suite 410, Melville, New York 11747, and Kaufman Dolowich Voluck & Gonzo LLP,

_____

the Worker's Compensation Law.") (citing *Torres v. Pisano*, 116 F.3d 625, 640 (2d Cir. 1997)).

135 Crossways Park Drive, Suite 201, Woodbury, New York 11797.